## Hogg's Appeal.

1. Where one is a debtor to a railroad company for a subscription to its stock, to a greater amount than his claim against said company, he cannot ask the payment of his debt in the distribution of the proceeds of a sheriff's sale of the property and franchises of the road, on a judgment of another creditor.

2. The sale by the sheriff of the railroad property and franchises, did not pass to the purchaser the debts or mere chosés in action due to the company from others.

November 22d 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Appeal from the Court of Common Pleas of *Fayette county :* Of October and November Term 1878, No. 228.

The Brownsville Railway Company was organized and incorporated under the Railroad Law of April 4th 1868, and the supplement thereto. On September 22d 1875, George E. Hogg subscribed his name to the articles of association of said company, and took two hundred shares of the capital stock of said corporation at $50 each, amounting to the sum of $10,000. The capital stock was duly called in by the board of directors of said company, and Hogg made payments on his subscription from time to time until he had paid $4500 on the same. On the 14th of Nouember 1876, the directors passed a resolution authorizing their treasurer, W. S. Craft, to borrow $2500, and Hogg loaned the company that amount by making two promissory notes, one for the sum of $1500, and the other for $1000, upon which notes the treasurer obtained the money. The notes were made by Hogg, payable to the order of Craft, as treasurer of said company, and he, as treasurer, endorsed them, and had them discounted at Bank of Brownsville, Pa. These notes were renewed from time to time, and in the meantime Hogg paid the treasurer $500, and he, as the treasurer, paid this sum on the $1000 note, and allowed Hogg a credit of that amount on his unpaid subscription, and the $1000 note was then renewed for $500, and from time to time thereafter, and also after the road was sold until Hogg lifted

and paid it. The $1500 note was renewed several times before and after the sale of the road until Hogg lifted and paid it also. No action was ever taken by the board of directors in regard to the payment of this loan, nor was there provision made in any way for its settlement. On the 5th of February 1878, the sheriff of Fayette county, by virtue of an execution issued on a judgment obtained by Campbell Brothers against the said company, in the Court of Common Pleas of said county, offered the railroad for sale and sold the same for $16,975, and on the —— of March 1878, a deed for said railroad to Charles E. Speer was duly acknowledged by the sheriff and confirmed by the court; and on March 23d 1878, the sheriff, on leave given, paid into the court $16,839.46, the money made from sale of railroad after deducting the costs on the writ, and on the same day the court appointed an auditor to ascertain claims against the company and report distribution of the funds made from the sale of the railroad. Hogg appeared before the auditor and claimed $2000, with interest from December 8th 1877, being the balance due him on the loan he had made to the company. The other creditors objected to the allowance of his claim for the reason that Hogg owed the company $5000 on his subscription to the stock of the same at the time the road was sold out by the sheriff; and that the $2000 should have been applied to his subscription, and that the auditor should treat it as having been applied. The auditor allowed him to share in the fund, to which allowance exceptions were filed by some of the other creditors; and on July 23d 1878, the matter came on for hearing on the exceptions in court, and the court directed that the exception filed to the claim of George E. Hogg, as allowed by the auditor, be sustained, and that the distribution reported by the auditor be corrected by striking out the amount appropriated to the claim of Hogg, and that said amount be distributed *pro rata* among the claimants returned by the auditor, so far as the same was necessary to pay their claims. From this decree Hogg took this appeal.

*W. G. Guiler* and *Daniel Kaine*, for appellant.—The money represented by the note was a loan to the company, without any agreement whatever that it should be applied as a credit on this subscription to the stock of the campany. A subscription to a railroad corporation is a debt of a different nature entirely from a common debt. The latter arises from the simple agreement of one party to pay another a certain sum of money for value received, and the former is an agreement between several persons to pay so much money into a common fund. The debt of the corporation could not be applied as a credit on the subscription to the stock of the same, without the consent of the corporation by the board of directors, which consent had not been obtained in the case at issue.

Moreover there was no equitable right on the part of the creditors

of the railroad company to demand such an application of the debt of the company, because the unpaid subscriptions to the stock of the company passed to the purchaser at the sheriff's sale by virtue of the sale of the road and its franchises, free from any and all claims that the delinquent subscribers might have against the company; and having passed and vested in the purchaser from the time of the sale, the creditors had no power or control over it thereafter, and consequently could not set off the unpaid subscription of Mr. Hogg against the claim which the company owed him, because if they were allowed so to do, it would infringe on the rights which the purchaser acquired by the sale, which rights, in the case at issue, were acquired by the purchaser, Mr. Spear, before any demand by the creditors that the set-off should be allowed.

*Boyle & Metzerat* and *Minor & Parshall* for appellees.—Hogg was never a creditor of the company, the money he had advanced to the company being merely payment of past due indebtedness upon his subscriptions to the stock; but even if it were in the nature of a loan, he could not, in equity, carry off a portion of the fund to the prejudice of creditors, and at the same time keep all that he owed to the company. If he had brought suit against the company on his alleged loan, the amount unpaid might have been set off, and in a sheriff's distribution, which the law says is to be made upon equitable principles, the set-off was clearly proper. The purchase at the sheriff's sale did not vest in the purchaser the debts due, unpaid stock subscriptions, or other choses in action of the company; but even if it did, the purchaser took subject to the sureties existing between the company and the stockholders.

The judgment of the Supreme Court was entered November 28th 1878,

PER CURIAM.—We think that in equity, while George E. Hogg is debtor for his stock to a greater amount than his claim against the railroad company, he cannot ask payment of his debt from it. The sale of the railroad property and franchises did not pass to the purchaser the debts or mere choses in action due to the company from others. As between the company and a subscriber to stock, the subscription is a debt collectable by ordinary suit. The distribution was properly made according to the principles stated in Bayard's Case, 20 P. F. Smith 453.

> Decree affirmed, with costs to be paid by the appellant, and appeal dismissed.